## GENERAL COURT, OCTOBER TERM, 1798.

### Mahoney *vs.* Ashton.

This was a petition for *freedom;* the petitioner claiming to be descended from *Ann Joice,* a free woman. At October term, 1797, the following *special verdict* was found, to wit:

"We the jury, impannelled and sworn to try the issue in this case, do upon our oath find, that the petitioner, *Charles Mahoney,* is the son of *Nelly,* who was the daughter of Mr. Carroll's *Sue,* who was the daughter of Mr. Digges's *Sue,* who was the daughter of a black woman named *Joice,* formerly held and claimed by Colonel *Henry*

*Darnall.* That the said *Henry Darnall* departed this life in the year 1711, and that the said *Joice,* from whom the petitioner is descended, was for many years held and claimed by the said *Henry Darnall* as his slave, and died in his possession, or in the possession of his representatives, at the Woodyard, in Prince George's county, but at what precise period she departed this life is to us unknown.

"We further find, that the issue of the said *Joice,* and their descendants, were and have been always held and claimed as slaves by the said *Henry Darnall,* and those claiming under him; and we do not find, that either the said *Joice,* in her lifetime, or any of her children, ever claimed the right of freedom.

"We further find, that the said *Joice* came into this country with *Charles* Lord *Baltimore,* son of *Cecilius* Lord *Baltimore,* from England, between the year 1676, and the 15th of February 1679; and if upon the whole, &c."

The case was continued until this term, (October 1798.)

*Ridgely* and *Johnson,* for the petitioner, were about to proceed in the argument, when the court expressed a wish that they would confine their observations to the question, whether the jury have found that *Joice* was in England, for without establishing that fact the petitioner could not succeed.

*Johnson* stated, that this would necessarily destroy their train of reflection. He would nevertheless endeavour to prove, that there was sufficient found in the special verdict to warrant a determination of the court that *Joice* was in England. He was at a loss to discover what stronger words could have been used in the special verdict to express that she was in England. It appeared to him to be self evident, and would not admit of argument. Unless she was there, it was impossible to prove that she came from thence.

This opinion he would endeavour to support by some authorities. He cited *Gilb. Law of Evid.* 182, 183; and contended, that from this authority it appears, that the court are justified in deducing necessary conclusions from stated facts; and that they are not precluded from drawing inferences from facts.

In 5 *Bac. Ab.* 286, *tit. Verdict* (E.) (referring to *Cro. James* 63.) "The question submitted to the court by a special verdict was, whether the resignation of a donative to the donor, be good; but it was not found that the donor had accepted the resignation. It was holden that the acceptance of the resignation should be intended;

Oct. 1798.
Mahoney
vs.
Ashton.

*and by the court* the question submitted to our consideration is, whether the resignation of a donative to a donor be good; and we will never entertain a doubt as to any thing whereof the jury have not doubted."

In the same book, 286, the question was with regard to a seisin, and the jury after finding some facts, specially conclude with saying, that this amounts to a seisin. The court, without paying any regard to the opinion of the jury, will judge whether the facts found do amount to a seisin.

*Key* for the defendant, said that he would in the course of a few observations, satisfy the court, that from the facts found by the jury, they could not infer that *Joice* was in England; every fact necessary to make out the petitioner's case must be found and not presumed. However strong the inference may be, if the jury do not find that she was in England, the court cannot, according to legal principles, deduce it. Notwithstanding every word in the special verdict may be true, yet she may never have set her foot in England. For if a ship had anchored in the River Thames, and this *Joice* had been taken thence, in common parlance she would have been said to have come from England.

In 5 *Bac. Ab.* 285, tit. *Verdict*, (D) A special verdict, in which the jury have omitted to find a necessary fact, is not good; every proper fact must be found *expressly*. 1 *Wils.* 54, 55—"Nothing is more settled than that the court can intend nothing, but what is found in the special verdict." *Loft* 573—The court must conclude from facts found. The jury find that *Joice* came from England. This is powerful evidence that she was there; but the jury are the only judges of that. Cites 5 *Bac. Ab.* 286. *Fitz.* 32, and the succeeding cases.

He next noticed the authorities adduced by the counsel for the petitioner. With respect to the question of seisin in 5 *Bac. Ab.* 286; the jury in that case found a conclusion of law, which the court would not regard. It was for them to determine whether the facts found amounted in law to a seisin.

In answer to the other case cited from the same authority, he said, although it was not found by the jury that the donor had accepted the resignation, yet they found the resignation, and there the sole question was, whether the resignation was good.

The case cited from *Gilbert's Law of Evidence* does not warrant the conclusion attempted to be deduced from it. The meaning is, when they have found a fact, any thing flowing therefrom in point of law may be deter-

mined by the court. He did not think the cases cited by the counsel for the petitioner were at all in his favour. He was of opinion that the doctrine advanced by the counsel was contradicted by every legal principle, and the determinations which he had produced.

Oct. 1799.

Mahoney
vs.
Ashton.

*Martin,* (Attorney General,) on the same side. He observed, that the gentleman who had preceded him had gone so fully into the question, and had examined the authorities with so much ability, that little remained to be said by him.

The special verdict finds facts and submits to the court the operation of the law upon those facts. It will be one great object with his adversaries to prove, that as soon as any person sets his foot on British ground he is free. Preliminary to the argument of this question, it is necessary to prove that *Joice* was in England. This fact is not found, and cannot be inferred by the court.

If the jury find, upon the plea of limitation, that the defendant acknowledged the debt within three years, the court must determine for the defendant, although the court. upon application, would have directed the jury that such acknowledgment was evidence of a promise; because the jury were to find the fact of a promise, and not having found it, the court could not presume it.

In this case no evidence was given to the court that *Joice* was in England; for finding that a person *comes from* a place excludes that place; so of the word *to*—Cites 3 *Term Reports,* 513, where on an indictment for not repairing a road leading *from A. to B.* it was held that B. was excluded.

*Johnson,* in reply. The gentlemen have not produced a single authority where the court did not draw necessary inferences from facts. The case cited from *Term Reports* was rather in favour of the petitioner. As to the case produced from 1 *Wilson,* had the gentleman read the whole of it, the court would have perceived its irrelevancy to the present case.

The attorney general has contended, that *from* and *to* are both exclusive. It has not been contended by the petitioner's counsel that *Joice* went through England, but that she came from there; and we contend that *from* one place *to* another implies that both are inclusive. Our act of assembly says, that negroes imported *from* Africa shall be slaves. This certainly means that they should come out of Africa.

GOLDSBOROUGH, Ch. J. The sole question at present for the determination of the court is, have the jury found,

that *Joice*, under whom the petitioner claims his title to freedom, was in England.

The jury must find the facts. It is the province of the court to declare the law arising upon those facts; and if sufficient facts be not found, the court must dismiss the case.

I think the fact of *Joice* being in England is not found. [Here he stated the verdict.] Every word of this verdict may be true, yet *Joice* may never have been in England.

CHASE, J. I concur in opinion with the chief justice.

It is necessary for the administration of justice, that the boundaries limiting the jurisdiction of the court and the power of the jury, should be preserved inviolate; and I consider it to be the indispensable duty of a good judge not to encroach on the province of the jury, nor to suffer the power and jurisdiction of the court to be invaded or trenched on.

It is the province of the jury to find facts, and the right of the court to declare the law arising on the facts found by the jury.

Facts which relate to the question of law to be decided by the court must be expressly found in a special verdict.

Circumstances, deductions and inferences, are not facts, but may be sufficient evidence to induce the jury to find the facts.

If the court could deduce or infer a material and essential fact, from facts found, it would be in their power, by deduction and inference, under the pretext that it was a necessary one, *to make the fact* upon which they are to declare the law.

The *essential fact* in this case, upon which the claim to freedom is made, is the following: that *Joice*, the ancestor, *was in England*; and that fact must be expressly found by the jury, and cannot be made out by the court by intendment. When that fact is found the question will arise for the decision of the court, whether such fact entitles the petitioner to freedom.

Facts must be found, and not the evidence of facts.

Demand and refusal is evidence of a conversion—those facts found in a special verdict would not justify the court in inferring or finding a conversion; and it might be said those facts were such as to warrant the court in intending a conversion, because they amounted to a conversion.

The case of the heriot is a strong case to shew the court cannot intend any fact to support a verdict.

A heriot is due from the heir upon the death of the ancestor holding under the Lord of a manor—a grant

'was made to three for their lives, and upon the death of one of them the Lord claimed a heriot. The jury find, that the custom of the manor did not warrant a grant of an estate for three lives; which by the strongest necessary inference was finding a heriot was not due, for they found the grant void. But the court decided it must be expressly found.

The case of length of possession, from which a jury may and ought to presume a deed, if found in a special verdict, would not warrant the court in intending the fact that there was a deed.

I am of opinion that the verdict is insufficient. But it is proper that a *venire facias de novo* should issue.

DUVALL, J. having been counsel for the petitioner gave no opinion.

On motion of the petitioner's counsel, the court directed the following entry to be made on the record: "That "the fact that *Joice* was in England is not sufficiently and "expressly found in the special verdict; and for as much "as there was sufficient evidence disclosed at the trial "by which the jury might have found the fact expressly, "the court order a *venire facias de novo*."